## LYMAN W. HAPGOOD *vs.* JOSEPH BROWN.

A grant of a grist mill on a stream, " to have the first privilege of water necessary for running the same as a good grist mill," purports to give the right to take as much of the water as is necessary, and not merely so much as is not subject to valid claims.

The owner of a saw mill and a grist mill, opposite to each other on a stream, conveyed the saw mill, " together with the stream from said mill half way to the grist mill." *Held,* that he retained for the grist mill only an equal right in the water privilege with the grantee of the saw mill, though during the last sixty years, for which the grantor and his ancestors had owned both mills, the saw mill, as the grantee knew when he purchased, had been used only for a portion of the time and only so far as not to interfere with the grist mill.

CONTRACT for breach of the covenant of warranty in a deed of a grist mill on a stream in Petersham.

The defendant's ancestors, and afterwards himself, had owned continously since 1802 the grist mill and also a saw mill situated, as appeared by a plan, on the other bank of the stream, opposite the grist mill. In 1863 the defendant conveyed to David Crockett, by warranty deed, the " saw mill, with the mill yard and fixtures, privileges and appurtenances, belonging to said mill and yard, together with the stream from said saw mill half way to the grist mill; " and in 1865 conveyed the grist mill to the plaintiff by the warranty deed in suit, describing the mill as " bounded west by the middle of the main brook. The grist mill to have the first privilege of water necessary for running the same as a good grist mill."

" Since the deed to the plaintiff, Crockett claimed a portion of the water of the stream for his saw mill when the plaintiff needed the same for his grist mill. Since 1802, until the conveyance to Crockett, the saw mill was used only a portion of the time, and used only so much of the water as the grist mill did not require, and as was not necessary to run the same as a good grist mill; and this was well known to Crockett when he bought."

The case was submitted, on facts agreed substantially as above stated, to the judgment of the superior court, and, on appeal, of this court. If the court should be of opinion that " Crockett was entitled to interfere with the rights warranted to

the plaintiff in the deed to him," the case was to be sent to a jury to assess damages; otherwise judgment to be entered for the defendant.

*P. E. Aldrich*, for the plaintiff.

*C. Brimblecom*, for the defendant.

Colt, J. The question to be decided is, whether, upon the facts agreed, Crockett is entitled, under his prior deed from the defendant, to interfere with the water rights warranted to the plaintiff in the defendant's deed to him.

By the deed of the plaintiff, a grist mill on one side of a watercourse, together with the first privilege of water necessary for running the same as a good grist mill, was conveyed. The phrase "first privilege" must be construed to mean the right to take so much water as is necessary, subject to no vested prior claim.

Originally, the defendant was the owner of the entire property, including the dam, grist mill of the plaintiff on one side, and saw mill of Crockett on the other side, of the stream. While the title was so united in him, there could be no existing easements or servitudes in part of the estate, in favor of another part. As such owner, the entire power of disposal was in him, to divide and convey as he pleased, charging either portion with burdens in favor of the other, granting or reserving the whole or a part of the water privilege, at his election, and thereby changing the whole mode of enjoyment under which the water rights had been theretofore used. A conveyance by metes and bounds of the premises of a mill on one side of a stream, and bounded by the stream, and a subsequent conveyance, by the same grantor, of the premises of another mill, on the other side, bounded by the same stream, would, unless there was something to control, show an intention to give equal rights to the grantees in the water power. The difficulty most frequently comes from uncertainty as to what the parties intended to convey by the descriptive terms used. But when, by sound construction, the intention is reached, it is decisive as to the respective rights. To this end, the familiar rule that the grant of a principal thing carries with it, by implication, all that is neces-

sary to its beneficial enjoyment, is often applied. Thus the grant of. a mill *eo nomine* will carry the head of water by which it is driven, with the building, land and privileges necessary to its use. But the privileges which pass by a grant, as well as the limits of the thing granted, will depend upon the circumstances and condition of the property at the time. The language of the deed is to be construed in the light of these circumstances. The grant of a mill, which would ordinarily, by implication, give to the grantee an unrestricted right to the water power connected with it, will be limited by the effect which this construction may have upon other interests and estates connected with the one granted; as, where one has several mills standing on the same privilege, and conveys one of them as a mill by name, without further description, the grant will not be extended by construction so as to destroy the other mills of the grantor, but will be held to give such rights in the water power as are reasonably consistent with their future profitable use. *Crittenden* v. *Field,* 8 Gray, 621.

The case at bar would present more difficulty, if the deed to Crockett was simply of the saw mill and its privileges, without reference to metes and bounds. It would then be necessary to determine whether the prior and ancient use of the water privilege connected with the plaintiff's grist mill, and known to Crockett when he took his deed, would make the water privilege conveyed with the saw mill subordinate to the rights of the owner of the grist mill; .whether the rights of the former could be said to be modified by a prior, open and visible appropriation in favor of the latter. *Cary* v. *Daniels,* 8 Met. 466. Under such a deed, it may be that the grant would be held to convey the water power reasonably essential to the convenient use of the mill granted, and to reserve the power reasonably essential to the use of the mill retained, having reference to the then existing structures, and their mode of using the water.

But the description in the deed to Crockett is in these words: "A saw mill, with the mill yard and fixtures, privileges and appurtenances, belonging to said mill and yard, together with the stream from said saw mill half way to the grist mill." By

reference to the plan, the stream appears to occupy the space between the two mills. And we are of opinion that the last clause in the description in Crockett's deed manifests an intention to convey a specific portion of the stream, and of the water privilege afforded by it, inconsistent with the claim that the grantor intended to reserve to himself the first privilege for the use of the grist mill. The language of the grantor, in a deed conveying a portion of his estate, is to be construed upon the supposition that he will omit nothing beneficial to himself which was agreed upon; and doubtful terms are therefore to be construed most strongly in favor of the grantee. *Johnson* v. *Jordan*, 2 Met. 234. *Ashley* v. *Pease*, 18 Pick. 268. Angell on Watercourses, (6th ed.) §§ 96 *a*, 101 *a*, 104.

The right of the plaintiff to the water privilege is therefore only that which remained after the deed to Crockett, and appears to be only an equal right with him. The defendant warranted to the plaintiff a superior right. The covenants in his deed are broken; and the case must be sent to a jury, as the parties have agreed, to assess the damages.

*Ordered accordingly.*