R.J. PALMER, Appellant,

v.

V.E. LILES, J.J. Paul and Southern Hydrocarbons, Inc., Appellees.

No. 01–83–00554–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 16, 1984.

Rehearing Denied Sept. 6, 1984.

C.E. Clover, Jr., Conner, Odom & Clover, Sealy, for appellant.

Lew W. Harpold, Hofheinz, Harpold, McDonald & Fitzgerald, Martin M. Hokanson, Hofheinz, Harpold, McDonald & Fitzgerald, Houston, for appellees.

Before EVANS, C.J., and LEVY and DOYLE, JJ.

## OPINION

LEVY, Justice.

The appellant, R.J. Palmer, challenges the granting of a partial summary judgment on December 7, 1981, and a final summary judgment on June 28, 1983. We affirm the trial court's judgment.

In 1973, the appellant and the appellees together owned an interest in a certain tract of land located in Lavaca County, Texas, known as the "Borcher's Field Prospect", including the mineral rights thereunder. Subsequently, a dispute arose be-

tween the appellant and the appellees on one side, and some corporations and individuals on the other side known as the "Hill Group", regarding the true ownership of this prospect. On September 21, 1973, the appellant and the appellees entered into a contract in which they agreed to cooperate with each other in order to protect and enforce their rights to the Borcher's Field Prospect against the Hill Group in pending future litigation. Prior to the September 21, 1973 contract, appellant owned ½ interest in the prospect, appellee Liles owned ¼ interest in the prospect, and appellee J.J. Paul and Southern Hydrocarbons, Inc., together owned the remaining ¼ interest. As a result of the agreement, the appellant transferred 16⅔% of his interest in the prospect to the appellees as consideration for their cooperation in the pending litigation against the Hill Group. This resulted in the appellant owning a ⅓ interest in the prospect and the appellees owning the remaining ⅔ of the prospect; ⅓ to Liles, and ⅓ to Paul and Southern Hydrocarbons, Inc., together.

At some time prior to trial against the Hill Group, the appellees made an assignment of ½ of their interest in the Borcher's Field Prospect to Marvin L. Morrison for $7,200 without giving notice to the appellant, nor was his consent ever requested.

The lawsuit by the appellant and appellees against the Hill Group was subsequently settled for $1,250,000. After reduction of 33⅓% of the proceeds for attorney's fees, the parties to this lawsuit and the third party, Morrison, received the following settlement proceeds:

| Palmer | 22.222% | $277,500.00 |
| Liles | 11.111% | 138,750.00 |
| J.J. Paul & Southern Hydrocarbons | 11.111% | 138,750.00 |
| Morrison | 22.222% | 277,500.00 |

After the settlement with the Hill Group, the appellant brought suit against the appellees for breach of contract in which he alleged that a certain provision of their September 21, 1973 agreement had been breached. The provision in question was:

That the rights of the parties hereto shall not be assigned without the written consent of the other parties, which consent shall not be unreasonably withheld.

It was the appellant's position that appellees' transfer of the interest to Morrison, without appellant's consent, violated this provision in the contract. He further reasoned that this provision in the contract gave him the right of first refusal to purchase the same interest that had been transferred to Morrison. The appellant alleged certain damages both as a result of the failure to allow him to purchase the interest, and as a result of bringing in Morrison as a third party to the original Hill Group litigation.

The appellees filed a motion for summary judgment which was partially granted by the trial court in 1981. In its judgment, the trial court held that: (1) the written contract between the parties dated September 21, 1973, was not ambiguous; (2) that the contract was not the result of a mutual mistake; (3) that there was no duty owed by the defendants to the plaintiff to sell or offer to sell their interest in the Borcher's Field Prospect to the plaintiff; and (4) that the plaintiff suffered no damages from the failure of the defendants to obtain the plaintiff's written consent to the sale of defendants' interest to Morrison. The court further decreed that the future proceedings in this cause would be restricted to the alleged claim against the defendants for fraud in the inducement of the plaintiff to sign the September 21, 1973 contract, reducing his share of the Borcher's Field Prospect from ½ to ⅓, and the issue of whether such claim was barred by the statute of limitations.

The appellees filed a second motion for summary judgment in 1983, alleging that appellant had no cause of action against them. Appellant filed a response and a cross-motion for summary judgment. Appellees' motion for summary judgment was granted by the trial court. The court, after incorporating its original holding in the partial summary judgment, found that there was no genuine issue of material fact

as to the appellant's cause of action alleging fraudulent inducement to sign the September 21, 1973 contract. The court also found that such cause of action was barred by the 2-year statute of limitations.

The appellant urges that the primary issue to be decided in this appeal is whether the admitted breach of a contract provision, which provides that there will be no assignment of any interest in the contract without the written consent of the other parties, will support an action for damages.

The appellant argues in points one, three, and five that the trial court erred in granting summary judgment for the appellees because the uncontroverted summary judgment evidence established that the appellees had breached their contract with the appellant and that the appellant was damaged as a result of that breach. Thus, the trial court erred in finding that the appellant was not damaged by the appellees' failure to obtain the appellant's written consent to the assignment of the appellees' interest to a third party. In his second point of error, the appellant argues that the trial court erred in granting summary judgment for the appellees because the summary judgment was based, in part, on the erroneous finding that there was no duty owed by the appellees to the appellant to first sell or offer to sell the appellees' interest to the appellant.

█ A defendant who moves for summary judgment has the burden of showing as a matter of law that no material issue of fact exists as to the plaintiff's cause of action. *Citizens First Nat. Bank of Tyler v. Cinco Exploration Co.*, 540 S.W.2d 292 (Tex.1976). The defendant may prevail by introducing summary judgment evidence that at least one of the essential elements of plaintiff's cause of action has been established conclusively against the plaintiff. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970).

The appellant relies on *Mitchell's, Inc. v. Nelms*, 454 S.W.2d 809 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r.e.) as controlling in this case, but we find that case is clearly distinguishable. In *Mitchell's, Inc. v.*

*Nelms*, a lease clause provided that before the lessee might sublet certain property, he would obtain the written consent of his lessor. The lessor, in turn, agreed not to "unreasonably withhold" such consent. The lessor subsequently refused to allow a sublease and the lessee brought suit for breach of contract for unreasonably withholding consent for a sublease. The court held that where the lessor would not have received an adequate amount of rent from the sublease, it was not unreasonable for the lessor to have withheld his consent and the lessee had no right to damages.

In *Gips v. Red Robin Corp.*, 366 S.W.2d 853 (Tex.Civ.App.—Houston 1963, writ ref'd n.r.e.), the appellant argues that *Gips* stands for the proposition that the breach of a similar provision in a contract would support an action for damages although it would not justify termination of the contract. *Gips* involved a provision in a contract for a deed between the original buyers and sellers. The sellers, the Botts, and the buyers, the Pattons, had entered into a contract providing that the buyer shall not sell, assign, or transfer the contract or any interest in the property without the written consent of the seller. The Pattons subsequently attempted to sell the said property to a third party, the Gips, without the consent of the sellers. The Gips attempted to rescind the contract to purchase the property from the Pattons and sued the real estate representatives involved in the transaction. The court, discussing the provision in the original contract that the buyers shall not sell or assign their interest without the written consent of the sellers, did not discuss what specific damages the original sellers might be entitled to, but did state that the "ultimate right the Botts had was to the payment of the purchase price". Thus, in *Gips*, the court indicated that the breach of the contract provision would entitle the original sellers to damages if indeed the Pattons failed to perform their part of the contract.

█ Analogizing the *Gips* case to the instant case, the appellant argues that this case is authority to support his action for

damages. In *Gips*, the original contract between the buyer and seller was for the purchase of certain properties. The purpose of the contract between the appellant and the appellees in the case at bar was to join together into the pending litigation against the Hill Group and to protect the rights of the appellant and appellees in the same litigation. It is agreed that the appellant and appellees joined forces in the Hill Group litigation, and as such, the parties to that agreement fulfilled their obligation. From the *Gips* case we can infer authority that the breach of a provision preventing assignment without consent of the original party will support an action for damages *when the party has suffered damages as a result of the breach.* In the instant case, the trial court found that, while the appellees had breached their contract with the appellant, the appellant did not suffer any damages as a result of the breach. The appellant makes the unique argument that his damages were a result of the transfer to Morrison of a percentage of the appellees' interest of the Borcher's Field Prospect. It is thus his position that the damages he suffered came as a result of his not owning the percentage transferred to Morrison, and that when the settlement was reached with the Hill Group, he would have been entitled to a much greater percentage of the settlement proceeds. We find this argument untenable, and we overrule points one and three.

The second point of error addresses whether the appellant was harmed by the failure of the appellees to offer him the interest which was transferred to Morrison. The appellant argues that there was a duty owed him by the appellees to offer him first the right to purchase the interest transferred to Morrison. The appellant's argument is premised upon his interpretation of the provision in question which states that neither party may assign his interest without the consent of the other, to include also the right of first refusal to the appellant to purchase any interest which might be transferred. We find this argument also to be unpersuasive and that appellant's construction would, in effect, vary the terms of a document which on its face is unambiguous.

It is true that contractual provisions must be construed, if possible, to mean *something* rather than nothing. *Portland Gasoline Company v. Superior Marketing Co.*, 150 Tex. 533, 243 S.W.2d 823, 824 (1951); *Page v. Superior Stone Products*, 412 S.W.2d 660 (Tex.Civ.App.—Austin 1967, writ ref'd n.r.e.). The provision of the contract in question *does* provide for a restriction on transferring an interest without the written consent of the parties, but says nothing about the right of first refusal. The appellant further argues that this type of provision is one in which more than one construction is possible, and as such the construction rendering the contract's possible performance will be preferred to one which renders its performance impossible or meaningless. *Portland, supra.*

A right of first refusal has been defined by the courts, and the phrase "first refusal" has a well-understood meaning in the business world, as giving the owner of such right the first opportunity to buy on the same terms offered by a bona fide purchaser. *Gochman v. Draper*, 389 S.W.2d 571 (Tex.Civ.App.—Austin 1965), *rev'd on other grounds*, 400 S.W.2d 545 (Tex.1966); *Sanchez v. Dickinson*, 551 S.W.2d 481 (Tex.Civ.App.—San Antonio 1977, no writ); *Ellis v. Waldrop*, 627 S.W.2d 791 (Tex.App.—Fort Worth 1982), *aff'd in part, rev'd in part*, 656 S.W.2d 902 (Tex.1983).

The appellant may not introduce parol evidence to vary the terms of an unambiguous provision of a contract, and we hold that the restricted transfer provision of the contract in the instant case did not give the appellant a right of first refusal.

The appellant's first three points of error are overruled. For the above stated reasons, we also overrule the fourth point of error, in which the appellant argues that the trial court erred in granting summary judgment for the appellees because the summary judgment was based, in part, on

the erroneous holding that the non-assignment provision in the contract in question was not ambiguous.

■■■ The question of ambiguity in a contract is a matter of law for the court's determination. *Brown v. Payne,* 142 Tex. 102, 176 S.W.2d 306 (1943). Furthermore, a provision or a term in a contract has been held to be ambiguous only when an application of the general rules of contract construction renders the writing capable of at least two reasonable yet different meanings. *F.M. Stigler, Inc. v. H.N.C. Realty,* 595 S.W.2d 158 (Tex.Civ.App.—Dallas 1980, *rev'd on other grounds,* Tex., 609 S.W.2d 754).

■■■ Appellant's argument is again premised upon the admission of parol evidence to vary the terms of the contract in question. In the absence of fraud, accident, or mutual mistake, parol evidence is inadmissible to contradict the terms of a written instrument that on its face is complete and unambiguous. *McCall v. Trucks of Texas, Inc.,* 535 S.W.2d 791, 794 (Tex.Civ.App.— Houston [1st Dist.] 1976, writ ref'd n.r.e.). We accordingly overrule appellant's point of error number four, and hold that the provision in question was not ambiguous.

The appellant states in his fifth point of error that the trial court erred in denying appellant's motion for summary judgment because the summary judgment evidence established as a matter of law the existence of a contract, a breach of that contract, and resulting damages to the appellant. The appellant again cites *Gips* and *Mitchell's, Inc., supra,* as controlling.

The appellant argues that the summary judgment evidence is uncontroverted that the parties agreed that there would be no assignment without the written consent of the other parties involved. With this we agree. However, the appellant further argues that had consent been requested of him, he would have withheld his consent, and that this would have been reasonable, in that he would have paid the same consideration to appellees as Morrison did. Thus, the appellees should have transferred their

interest to him instead of Morrison, and his damages as a result of this failure to transfer to him are easily calculated. The appellant further argues that after calculating his damages, this court can also take judicial notice of the reasonable attorney's fees that he incurred as a result of this suit against the appellees and subsequent appeal.

We cannot agree with the appellant's argument, and find it to be without merit. As the appellees have noted, there was no evidence to show that the appellees were obligated to sell or transfer first to the appellant. Moreover, there is no evidence to show that the appellees had a duty to try and transfer their interest to appellant instead of Morrison. As to whether the appellant suffered any damages other than those allegedly from the failure to transfer the property to him, we note that we can find no evidence of any other damages in the record. Furthermore, the appellant's attorney conceded at oral argument that his client was not harmed in any way from the breach of contract except for the damages incurred as a result of the failure to transfer.

■■■ The only evidence in the record regarding the issue of attorney's fees to indicate that the appellant made written demand upon the appellees in connection with his claim for attorney's fees, more than thirty days prior to the lawsuit, is the appellant's statement in his response to the appellees' Motion for Summary Judgment. The reasonableness of attorney's fees is a question of fact, and must be supported by competent evidence. *Great American Reserve Ins. Co. v. Britton,* 406 S.W.2d 901 (Tex.1966). While the appellant requests that this court take judicial notice of the reasonableness of his attorney's fees, a court does not have the authority to adjudicate the reasonableness of attorney's fees on judicial knowledge without supporting competent evidence. *Great American Reserve Ins. Co., supra; Bullock v. Foster-Cathead Co.,* 631 S.W.2d 208 (Tex.App.— Corpus Christi 1982, no writ).

We, therefore, hold that there was no evidence offered to substantiate the appellant's claim for either damages or for attorney's fees, and accordingly overrule the appellant's fifth point of error.

The trial court's judgment is affirmed.